17-4084. I had trouble reading the docket that far away and I also had trouble reading my watch that far away, so I think we might have taken a little more than ten minutes. Good morning, Mr. Pincus. Good morning. May it please the Court, Counsel, my name is Howard Pincus from the Federal Public Defender and I represent Roberto Roman. Mr. Roman's State Court acquittal of murder was relevant to his defense of smudge marks on the headliner of the car, which the prosecution's expert used to reject Mr. Roman's position that the passengers shot Deputy Fox were manufactured. It supplied critical proof for why law enforcement officials would take such drastic action. The District Court erred in excluding this proof and this Court should remand for a new trial on the murder conviction and the associated 924C conviction. Because there is insufficient proof that Mr. Roman carried the rifle during, I'm sorry, in relation to the sharing of drugs with his friend at his friend's apartment earlier that night, it should also vacate Count 4 for insufficient evidence and remand with instructions to dismiss. The government does not try to justify the exclusion of the acquittal on the theory that District Court used. District Court stated that there was already abundant proof, abundant facts that showed a motive to fabricate and proof of the acquittal was therefore unnecessary. But the fact it referenced went only to the possibility of fabrication. It was such things as the fact that an experienced forensic supervisor, Mr. Squire, spent 30 to 40 hours in the car and made no mention of the smudge marks. That Lieutenant Higley spent an hour in the car, made no mention of the smudge marks. That Mr. Squire denied doing any testing at the headliner even though he had and it would have put him in a position to see any smudge marks if they were in fact there. The only thing that went to the motive to fabricate was the seriousness of the charges here and of course they were very serious. But the prior acquittal greatly increased the motive that might, that the seriousness of the charges might be thought to create. It gave the officers reason to fear that what happened before might well happen again. The wrongful determination that there was already abundant facts of motive tainted the District Court's 403 balance. Under this Court's decision in McVeigh, this Court should make the balance de novo using the factors that the District Court identified on the other side of the balance. Because all the jury had to consider here was the fact of the acquittal. There was minimal risk of jury confusion or misleading, jury being misled on the issues or of unfair prejudice to the government. A curative instruction under Rule 105 would have solved any, would have taken care of any minimal prejudice that might be thought to exist as the Ninth Circuit held in Barunda. Well, it is a bit of a bombshell to drop to say that the defendant has been acquitted of this charge. The jury may not be that up-to-date on dual sovereignty and think that it's unfair and decide on that basis. Well, that's what the curative instruction would be for. The Court could say this is being admitted only for a limited purpose. You may not consider it for that purpose. What happened in the State trial was a separate matter. You have to judge the evidence only on what occurred, what's introduced in this trial, and this goes only to a motive to fabricate. Very simple. And the juries, we presume, are able to follow instructions. And now, especially as exclusion on Rule 403 grounds is an extraordinary remedy to be exercised sparingly, this Court on de novo balancing should hold that the exclusion of the acquittal was improper. The government claims this Court can avoid that result by concluding that smudge marks are visible on Exhibits 171 and 172, which are photographs that were taken before the acquittal and which its expert, Mr. Cleese, claimed he could see. The defense counsel argued that the smudge marks were not there. They do not appear to be there on the exhibits that are in the record, even when they're used, magnification under, you know, you blow it up on the computer to look for it. And certainly questionable whether they are. As a comparison with Exhibits 143 and 175, which were taken after the acquittal and in which the marks are clearly visible, shows. Wasn't that all thought out in front of the jury, though? Why could the defendant not say, look at these pictures that were taken before? Well, he was what was missing was some motive for there to be fabrication. And that was critical to thinking that law enforcement would do such a thing. Without it, it was just a possibility floating in the air. The motive was critical here to give content to Mr. Roman's defense to the charges. Mr. Roman's testimony as to where Mr. Greathouse had the gun does not make the exclusion of the acquittal harmless or on the constitutional claim not material. Mr. Roman described the angle of the gun by holding his right arm up to his left shoulder. The prosecution's expert, Mr. Cleese, said that this put the muzzle of the gun in the approximate area of the shoulder or the arm, although he mistakenly called it the right arm. It would have to be the left arm if Mr. Roman was bending his right arm. This would have put the ejector port pretty much directly over the driver, and the smudge marks were much further over. Mr. Roman, as the photograph on page two of the government's brief shows, was in his statement to the police, which he said he gave only because he'd agreed to take blame for Mr. Greathouse, had the gun over here. And this is just where he's holding it, so the ejector port would be much further over to the left. So although it put the gun in the driver's area, it would be inconsistent with the smudge marks, and it did not rule out the Mr. Roman's description of what actually happened. Can you talk some more about what you said was just, you know, a statement that you seem to want to write off because he said he essentially lied and was taken to blame, but everything about that confession that he made, which was that he was the shooter and he even demonstrated like 15 times how he held the gun and how he shot this officer. And then they corroborated so much of his statement, and I guess I'm wondering why, assuming there's error, this isn't harmless. Well, what they corroborated were facts after the shooting. His travels to Salt Lake City and to other parts in Utah, it was things that were uncontested. It had nothing to do with who shot him. I'm speaking more about his statement essentially also corroborated what they knew about what had happened with these vehicles before the shooting, that they'd met up and one vehicle takes off and everything about it, and it's consistent with the other individual ending up at home and appearing surprised when officers. He had been stopped by the police. I'm saying it's consistent with all of the events surrounding the shooting as well as some of the events post. And it's a confession. It's a confession. It is a confession, and Mr. Roman said he threatened my children. I agreed to take the blame for it. He didn't threaten my kids, and that's why I gave this statement. He knew that he had been stopped. He knew that his interaction with Mr. Greathouse had been seen. So the fact that he told that he admitted being there, that he admitted selling drugs to Mr. Greathouse, that was unsurprising. What happened afterwards is just as consistent with Mr. Greathouse being the shooter as Mr. Roman. His entire defense to the murder chart was that Mr. Greathouse did the actual shooting, that he then agreed to take the blame, and that, you know, and they then fled. And all of the stuff about fleeing and even saying to Mr. Chavez that I shot the police officer, Deputy Fox, that's consistent with his agreeing to take blame. What's more significant here is when he said in Spanish something that literally means they shot the cop or we shot the cop. That's more consistent or at least is suggestive of Mr. Greathouse possibly being the shooter. This was his entire defense to that charge. And the jury also did not have to take as conclusive Mr. Clee's testimony that if Mr. Gunn, Mr. Greathouse had the rifle where Mr. Roman demonstrated that there would likely be singeing or soot on his jacket. Mr. Clee said earlier, page 926 of the record, volume 2, that probably and sometimes and a lot of times, if a rifle muzzle is on or near skin or clothing, there will be a muzzle flash burn. He also said that Mr. Roman had the muzzle in the approximate area of the shoulder area, so not necessarily on top of it when he described what Mr. Roman demonstrated. Mr. Roman said that when he then turned to the left, when he noticed that Mr. Greathouse had the rifle out, that would put the shoulder and arm area further away from the rifle. There was enough leeway here that would allow the jury to credit Mr. to not credit Mr. Clee's claim. So this Court should vacate the murder conviction and the associated 924C. This Court should also vacate the 924C convictions predicated on Mr. Roman carry the rifle in relation to the sharing of methamphetamine. What happened to during? I know that you abandoned that argument, but I wasn't ever sure why. I did. I looked further at it in researching the reply brief, found some additional stuff, and decided that was not the right position to pursue and I wanted the Court to focus on the in relation to aspect. And Mr. Roman did move for a judgment of acquittal at the close of the government's case, but not at the close of all the evidence. But the proof, given the need to view the evidence in the light most favorable to the government, was the same, effectively, at both times. The only thing that Mr. Roman's testimony added was that he had driven to Mr. Chavez's apartment, but that was obvious from the fact that they lived 20 minutes apart, that he arrived there at 5 o'clock, and that he left in his car. So whether this Court reviews de novo or for plain error, Mr. Roman is entitled to relief. This Court has repeatedly recognized that review for sufficiency of the evidence is largely the same exercise under either standard. And there was no proof that Mr. Roman had the rifle in relation to the sharing of drugs. What about just the driving to? He drove there with it and he carried it into the house. Why wasn't that used as protection, which is in relation to the distribution and we've held that? Let's take the driving to the apartment. We don't know where the gun was. We don't know where the rifle was. I don't think it really matters. Does it matter where the gun was under our case law? It does matter. If certainly the rifle is being carried at that point. The question is, is it in relation to the distribution of drugs? He carried it into the house. He did carry it into the house. And why wasn't that? Couldn't that? And we're looking at the evidence in the light most favorable to the government. Why couldn't that work? We are. There's no evidence. For protection. I'm sorry. There's certainly an easy inference there that we can make that he carried it for protection. The inference that's logical is that he took the rifle in there to share the gun, to show it to his friend. They had shot together. They were holding the rifle in the apartment. The suggestion would have to be that he had the rifle with him on the trip from the car to the apartment. We have no evidence for protection or to embolden himself in that. We have no evidence about anything that would be relevant to that. No evidence about what the area is like. No evidence if anybody's nearby. No evidence of how, you know, how isolated this is. We don't know anything about that because the government didn't put on any proof. It had Mr. Chavez on the stand. It could have introduced proof on that if that was going to be its theory. But it didn't put any proof on that. The evidence here is what the Supreme Court in Smith said won't support a 924C conviction where the carrying is only coincidental to the drugs. Mr. Roman, this was not a typical distribution. It was sharing the drugs. Yes, that counts as distribution. But this is not something where Mr. Roman would think he needed it for protection, certainly from Mr. Chavez, from, you know, from anybody else. We just don't know because the government put on no proof. And under this Court's precedent, the lack of, excuse me, the insufficiency of the evidence will meet the first three prongs of plain error review under Good. And only in the rare exceptional case will it not warrant the exercise of discretion and notice the error. In this case, it's unlike Good where, you know, there was other proof that showed guilt but just hadn't been submitted to the jury, the instruction. So this is not one of those rare cases where this Court should not exercise its discretion and it should vacate that 924C conviction for a man with instruction to dismiss it. Thank you. May it please the Court. Elizabeth Ann Stevens, Assistant United States Attorney for the District of Utah. It is difficult to imagine more compelling evidence than what was presented to the jury at Mr. Roman's trial in support of his conviction for the intentional killing of Millard County Sheriff's Deputy Josie Greathouse Fox. And for that reason, this Court could simply conclude that even if there was an error in excluding evidence of the State court acquittal, any error was harmless and harmless beyond reasonable doubt. First, the jury heard and saw a video confession where Mr. Roman demonstrated no fewer than 12 times how he held the AK-47, put his head to the side so that he would not be as affected by the blast of that rifle, and how he shot with his right trigger finger Deputy Fox. That was a confession that was witnessed by Detective Oliver and Lieutenant Higley who also testified about it. He demonstrated for the officers with sound effects. Boom, boom. That's how he shot Deputy Fox. In addition to this confession to two law enforcement officers, he confessed to his friend, Ruben Chavez, the man that he trusted enough to call in the middle of the night when he was fleeing from police, that he shot Deputy Fox. And as if two confessions are not enough, Mr. Roman also confessed to fellow inmate Jason Corey. Nine months before Mr. Roman's State trial, he told Jason Corey that he shot Deputy Fox, but he thought he was shooting Deputy Kimball. And he told Mr. Corey that he had a quote, unquote, BS story that he was going to tell at his State court trial. He was going to tell that jury that Deputy Fox's brother was the shooter. And that is the story that he peddled at the trial. And Mr. Roman told Mr. Corey that because Mr. Greathouse was no longer around, he sadly died of a drug overdose four months after his sister's death. He was no longer around to defend himself. Just the only difference, the only main difference between the State and the Federal trial, the smudge marks on the headliner, or did the State prosecution fail in other ways, fail to prove its case otherwise? That's not in the record, Your Honor, but it's my understanding from the trial team that there were at least two pieces of evidence that were not presented. I believe this is correct. If it's incorrect, we actually have two of the prosecutors here in the courtroom. They didn't put on evidence of Jason Corey's statement. And they also didn't put on the evidence from Sarah Hatch. Sarah Hatch was Mr. Roman's girlfriend, certainly not a pro-prosecution witness, who testified on January 1, 2010, a mere four or five days before Deputy Fox was shot, that they were driving in Salt Lake. They saw a police officer. Mr. Roman said to Sarah Hatch that he would do whatever he had to do not to go to jail. So what's interesting, too, about Mr. Corey's testimony about the, quote-unquote, BS story is that he immediately got in touch with Lieutenant Higley, and he told him about this in November, nine months before the trial. So this wasn't some sort of late-breaking story or some story that came out after the State acquittal. Lieutenant Higley actually knew about it before the State trial. And then, finally, we have a few days after New Year's, on January 5, when Mr. Roman was selling drugs to Ryan Greathouse. Some lights were approaching as they were in the car. And Mr. Roman said to Mr. Greathouse, if that's not a cop, it's not going to be good for them because he would shoot them. And Mr. Roman admitted that. He admitted that he said that to Detective Oliver and Lieutenant Higley during his confession. And then, as we know, 15 to 20 minutes later, Deputy Fox was shot. So even in the absence of any of the reconstruction evidence, even in the absence of the cartridge casings in the backseat, even in the absence of the medical examiner's trajectory analysis, even in the absence of the lack of smudge marks on Mr. Roman's jacket, even leaving aside all of that, the jury had an abundance of evidence of Mr. Roman's guilt. And his conviction should be affirmed. Because even if believed, even if believed that the smudge marks were created after the fact, it doesn't exculpate Mr. Roman because of the confessions, because of his contemporaneous statements of intent that he would shoot an officer. That's bombshell testimony, as well as evidence of a State court acquittal. And none of that is discounted at all, even if the jury believed that those marks were not there. Turning to Count 4, if there are no questions with respect to Count 1. Here again, the Court could simply conclude that because the evidence was sufficient, we view the evidence in the light most favorable to the jury's verdict. We view all the inferences in the light most favorable to the jury's verdict. The evidence was sufficient. But the United States wants to press a point on waiver here. Because this Court has not yet ruled on whether raising plain error in a reply brief is sufficient for preservation purposes. It hasn't reached that issue yet. And this is a case where the United States would urge that because of the unique circumstances here, there was waiver. Of course, we have the failure to renew the judgment of acquittal motion at the close of all the evidence. But we also have the failure of Mr. Roman's counsel to even mention Count 4 in closing argument, which leads to the suggestion that perhaps the sufficiency of the evidence was essentially conceded. We have here pertinent facts that were not disputed. That he took the AK-47 with him to Mr. Chavez's house with the methamphetamine. That he took it into the apartment from the car. That he took it with him when he left the apartment. And we also have a case where Mr. Roman is sentenced to life plus 80 years. So the 25 years on Count 4 for a person who's already serving life and who was 46 years old makes this a pretty unique case. It's also pretty unique that he just didn't, he distributed, but he didn't get anything for this. He shared, right? He shared the. That is not the typical case that you see. Right. He shared it, and he was there for six hours, and there's nothing contradicting his testimony that he was, they were playing video games. They played with the gun. Doesn't appear that the gun, at least while he was there, was being used for anything other than their interest, I guess. That's true. That's very true. That's the evidence, and you didn't put on anything else. Absolutely true. But 924C was passed as legislation to encourage drug dealers to leave their guns at home. And so in light of the events that happened shortly after the sharing of drugs with Mr. Chavez, it is not at all unreasonable to infer that if someone had approached Mr. Roman as he was walking into Mr. Chavez's apartment, that he wouldn't have used that weapon at that point. So it's a unique distribution. It's not necessarily a unique 924C because a drug distributor with a gun, that's really not that unusual. And here, there was no suggestion in Mr. Roman's reply brief or today in argument about why he shouldn't be considered to have waived this argument by failing to make a plain error argument until his reply brief. This is not some arcane rule. This has been around for a while, that if a motion for judgment of acquittal is not have the court read the United States' motion to file a surreply and have to file a surreply and read a surreply. In terms of fairness to the parties, where there's a word limit, perhaps, it would be better for a party not to have to spend time discussing the standard of review that should have been in an appellant's opening brief. So finding waiver in this case would emphasize the importance of preserving judicial resources. Is the waiver because it wasn't raised to the reply brief on appeal or was the waiver because he didn't renew the motion for directed verdict? Well, there's two points there. There are some theories that were raised in the briefing that were not raised below. Those are waived because of what happened below. With respect to the argument that was made, Mr. Chavez is Mr. Roman's friend. They were playing video games. There was no reason for him to need the gun while they were sharing the drugs. That would be waived because plain error argument was not raised in the opening brief. But in any event, again, the evidence was sufficient. So the error was raised. It just wasn't raised in the context of saying it was plain error and here's the standard for plain error. Correct. And plain error isn't – it's not a throwaway. I mean, certainly there's case law that talks about the first two prongs being similar to de novo review. But it's not a throwaway. There are four prongs. And it is Mr. Roman's burden to meet all four prongs, which the United States admits he has not done. But in any event, the evidence certainly was sufficient. Viewing it in the light most favorable to the jury's verdict, he had the AK-47. He had the methamphetamine. He drove from his house in Delta to Mr. Chavez's apartment in Fillmore. He carried it with him. We know what he did with the gun afterwards. The evidence was sufficient. Pause there, because count four, of course, incorporates the drug crime in count three. And the government had a choice on how to charge count three and chose distribution. In fact, knowingly and intentionally distributed a quantity or mixture of substance containing methamphetamine. You have a number of choices. You could charge possession with intent. You could charge conspiracy. You chose distribution. And what I'm not seeing right now is I carry a firearm during and in relation to a drug trafficking crime, which is defined as the distribution. How is his having this gun, which everyone seems to concede the evidence was one-sided, that it was, hey, look at my neat gun and let's play around with this gun. How is that in relation to the distribution? And you're posing examples that I think go beyond count three, which is, well, he carried it on the 20-mile drive between Delta and Fillmore, and he had it later when he left the apartment and he was going to make the other methamphetamine sale. Those are fine and dandy, but they're not tied to count three, which is the distribution, which is a moment in time, is it not? No, Your Honor. I don't believe it is a moment in time offense, or at least I don't believe it would be plain error. And that would be the obligation of Mr. Roman to show in this context, because that argument wasn't made below. So he would have to show plain error. There's no case law. And this kind of goes to the during argument that was dropped by Mr. Roman before argument. And during a drug trafficking defense, in common parlance, would have to include getting there. So getting to the scene when you have the drugs and the gun would be during and in relation to, because otherwise it wouldn't be a crime to have the gun or perhaps shoot someone as you're getting to the place where you're actually turning the drugs over. And I don't think that that would be supported by the intent of 924C or by this Court's case law, because this Court has routinely held that when you use or have a weapon for defense and deterrence, that's during and in relation to. So if he had left the AK in the car and just gone in and seen Chavez, would you contend that count three and count four are met? If he left it in the car? No. No. I would still want to include the drive from Delta to Fillmore under Muscarello, which talks about it being sufficient if it's in a lock trunk or a glove box. So the answer is yes, that had he left it in the car, you would still say count three and count four are met because he had the firearm in the car on his way to see Mr. Chavez. Possibly. Was that ever argued to the jury? Which part? The part about it would be a stand-alone violation for him to have carried this firearm all the way up to Mr. Chavez's door driveway. No. No. And so you're arguing something different here than what was argued to the jury, aren't you? What was argued to the jury is he had this firearm inside this apartment or house. And now I'm detecting a sliding to a brand new theory. No, it was argued below that he had it when he went into the apartment. That was in the closing argument, I believe. I understand that the fact was established that he had the firearm in the apartment. But in view of the other facts, which is they're just playing around with this firearm, and we say how is that in relation to the distribution, you say, well, he carried it 20 miles in his car. Right. And I say that wasn't something argued to the jury, was it? Right. But I think what also was argued to the jury, and I think this is true, in that even though Mr. Chavez didn't feel as though he was being threatened or that anyone needed the gun at that time, I think it could be fairly well said that sometimes when people share drugs or do something, they can go bad and they can go bad fast. And he did have the weapon there and it was available. Thank you. Is that the argument you're making on appeal or are you making just the argument about Kerry? I'm sorry. Are you making did you make that argument on appeal to or just the argument about he carried the weapons to get it carried again to get there to the. That was an argument that was made in the district court about how the drug deal could appeal is what I'm saying. No, we did not. Yeah. Yeah. Right. We did. Yeah. Thank you. Just briefly, the smudge marks were critical here because they helped the expert place the gun at 935 of the record and place Deputy Fox at 1263 to 64 of the record. So it was strong corroboration for the relying on Mr. Roman statement to the police. That's if there was and the government talked about bombshell evidence fabricating evidence. If the jury found that would be a true bombshell. Very quickly on the 924C, Muscarella talks about Kerry. It says in relation will limit it. This is an appropriate case to exercise your discretion to notice if you if there's a waiver. The evidence was the same at both times. The standard is the same. And on that point, I refer this court to the statement in good. It's a non-controversial proposition that a conviction in the absence of sufficient evidence of guilt is plainly an error. Clearly prejudice defendant. So that's the first three prongs of plain error and almost always results in manifest injustice. The fourth problem. Thank you. Thank you for your arguments. The case is submitted.